Benny HATLEY, Appellant,

v.

A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.

No. 92–1934.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1992.

Decided April 13, 1993.

Kelly Hill, Asst. Atty. Gen., Little Rock, AR, argued for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and STROM,* District Judge.

WOLLMAN, Circuit Judge.

Benny Ray Hatley appeals from the dismissal of his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. We affirm.

## I.

Hatley was found guilty by a jury on two charges of capital murder arising out of the killing of two Cotton Plant, Arkansas, police officers on July 13, 1984. The Arkansas Supreme Court affirmed Hatley's convictions on direct appeal, *see Hatley v. State*, 289 Ark. 130, 709 S.W.2d 812 (1986), and Hatley is serving two consecutive life sentences in the Arkansas State Penitentiary.

Hatley raised thirteen grounds for relief in his amended habeas petition. The magistrate judge [1] to whom the case had been assigned found that Hatley had procedurally defaulted with respect to nine of the thirteen grounds by failing to raise them before the state court and that he had not established cause and prejudice to excuse the procedural defaults. The magistrate judge found no merit in the remaining four claims. The district court [2] adopted the recommendation and dismissed the petition.

In his brief on appeal to this court, Hatley raises the following claims: (1) the trial court erred in seating a death-qualified jury and in excusing for cause a juror who voiced her opposition to imposing the death penalty; (2) the seating of a death-qualified jury resulted in the exclusion of a disproportionate number of black citizens in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (3)

Craig Lambert, Little Rock, AR, argued (Herbert T. Wright, Jr., on the brief), for appellant.

---

* The HONORABLE LYLE E. STROM, Chief Judge, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable David H. Young, United States Magistrate Judge for the Eastern District of Arkansas.

2. The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas.

Hatley was prejudiced by the admission of photographs depicting the victims; and (4) the jury deliberations were tainted by the presence of a newspaper article in the jury room.

Hatley first claims that the trial court erred in allowing the prosecution to challenge for cause any prospective jurors who gave any indication that they disapproved of the death penalty. Although the district court found that this claim was procedurally barred, we agree with the state that the claim was raised by Hatley in his appeal to the Arkansas Supreme Court. Accordingly, the claim is properly before us. We hold, however, that it is foreclosed by the Supreme Court's decision in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

■ In a more specific challenge to the jury selection process that occurred in his case, Hatley contends that the trial court erred in excusing for cause a potential juror who voiced her reluctance to impose the death penalty.

Under *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), a trial court may excuse a juror for cause if it finds that "the juror's views would 'prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath.'" *Hulsey v. Sargent*, 865 F.2d 954, 956 (8th Cir.), *cert. denied*, 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 270 (1989) (quoting *Witt*, 469 U.S. at 424, 105 S.Ct. at 852). In reviewing this determination, we are mindful that "deference must be paid to the trial judge who sees and hears the juror." *Witt*, 469 U.S. at 426, 105 S.Ct. at 853.

During voir dire, the potential juror in question repeatedly expressed her opposition to the death penalty. At one point, she stated, "[n]o matter what the facts and circumstances are I could not consider the death penalty." Further, she remarked that if she found Hatley guilty, she would "automatically vote for life without parole." Accordingly, we agree with the state that the trial court properly excused this person for cause.

■ Because Hatley failed to present his *Batson* claim in his petition to the Arkansas Supreme Court, and because he has shown no cause to excuse his failure to do so, he is barred from raising it in this proceeding. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ Hatley argues that the trial court erred in admitting photographs of the two victims. Hatley claims that the state's only purpose in introducing these photographs was to inflame the jury's emotions, because neither the identity of the victims nor the cause of death was contested.

We have held that the "[a]dmissibility of evidence is a matter of state law and usually does not form the basis for habeas corpus relief." *Hulsey v. Sargent*, 821 F.2d 469, 472 (8th Cir.) (addressing claim that Arkansas court's admission of photographs violated due process), *cert. denied*, 484 U.S. 930, 108 S.Ct. 299, 98 L.Ed.2d 258 (1987). Even if we determine that the trial court erred in admitting the evidence, to merit habeas relief "[t]he trial error must be so great that it infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Id.; accord Wood v. Lockhart*, 809 F.2d 457, 459–60 (8th Cir.1987).

Hatley's claim is without merit. There is no evidence from the record that the photographs were inflammatory. Rather, the record indicates that the photographs depicted routine autopsy views and were used to assist the medical examiner during his testimony. Accordingly, the district court properly rejected this claim.

■ Hatley next argues that the jury foreman improperly brought information concerning parole to the attention of the jury during deliberations. Specifically, Hatley complains that the jury foreman brought into the jury room a short newspaper article listing recent parolees from the Arkansas Department of Corrections, their crimes, and the beginning dates of their sentences. *Hatley v. State*, 709 S.W.2d at 817.

We note initially that Hatley can obtain relief on this claim only if he can show that the article's presence in the jury room during deliberations amounted to a deprivation of due process. *Isom v. Lockhart,* 847 F.2d 484, 486 (8th Cir.1988). "The mere violation of state law, without more, does not amount to a deprivation of due process in violation of the Fourteenth Amendment." *Id.*

The Arkansas Supreme Court found that "the juror stated the article contained no information that was not already a part of his common knowledge and the article was not circulated." *Hatley v. State,* 709 S.W.2d at 817. Moreover, the Arkansas Supreme Court found that "[t]here is no indication the information was used to improperly influence any juror." *Id.* We accord these factual findings of the Arkansas Supreme Court a presumption of correctness under 28 U.S.C. § 2254(d). Hatley has failed to demonstrate that the juror's act of bringing the article into the jury room resulted in prejudice sufficient to deny him due process. *See Isom,* 847 F.2d at 486. Accordingly, we reject Hatley's claim for relief concerning the admission of the photographs.

Last, we address Hatley's claim that the police obtained his confession in violation of his Fifth Amendment *Miranda* rights.

█ Hatley failed to raise this issue in his brief to this court.[3] Federal Rule of Appellate Procedure 28(a) provides that an appellant's brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor." We have generally held that "a party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." *Jasperson v. Purolator Courier Corp.,* 765 F.2d 736, 740 (8th Cir. 1985). Nonetheless, we have discretion to consider issues not raised in the briefs, "particularly where substantial public interests are involved." *Continental Ins. Cos. v. Northeastern Pharm. & Chem. Co., Inc.,* 842 F.2d 977, 984 (8th Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). Because any attempt by

Hatley to raise the *Miranda* issue in a subsequent habeas proceeding might be deemed to constitute an abuse of the writ, we elected to exercise our discretion by requesting supplemental briefs on this issue.

The facts relating to Hatley's Fifth Amendment claim are not in dispute. At 4:00 a.m. on July 14, 1984, Des Arc, Arkansas police officer Ken Stice arrested Hatley and read him his *Miranda* rights. Hatley immediately told Stice that he did not wish to say anything. Hatley concedes that the police immediately terminated their questioning and took him to a cell.

█ Two hours later, at about 6:00 a.m., police brought Hatley downstairs for trace metal tests. By this time, officer Bill Gage of the Arkansas State Police had arrived. Gage had not been told what Hatley had said but had been told that he might not talk. Gage told Hatley, "I'm Bill Gage with the State Police. Benny, you're in a lot of trouble. You want to tell me about it?" Hatley replied, "Yes, sir, I'll talk to you." Gage thereupon read Hatley his *Miranda* rights, going over each right individually. Hatley then told his story in narrative form and readily admitted to having shot the two officers.

"The admissibility of statements obtained after a person in custody has decided to remain silent depends on whether his right to cut off questioning has been 'scrupulously honored.'" *Otey v. Grammer,* 859 F.2d 575, 578–79 (8th Cir.1988) (quoting *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975)), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1990). In *Mosley,* the Supreme Court relied on three factors to determine whether the police had scrupulously honored the defendant's right of silence: (1) whether the police immediately ceased the interrogation upon defendant's request; (2) whether they resumed questioning only after the passage of a significant period of time and provided a fresh set of *Miranda* warnings; and (3) whether they restricted the later interrogation to a crime that had

---

3. We note that Hatley's present counsel did not prepare Hatley's brief to this court.

not been the subject of the first interrogation. *Mosley*, 423 U.S. at 106, 96 S.Ct. at 327–28; *Otey*, 859 F.2d at 579.

Applying the *Mosley* factors, we hold that Hatley's Fifth Amendment right to remain silent was not violated.

With respect to the first *Mosley* factor, the police immediately ceased the interrogation upon his request. Indeed, Hatley concedes in his supplemental brief to this court that "the first *Mosley* factor weighs in the State's favor...."

Under the second *Mosley* factor, we must determine whether the police resumed questioning after the passage of a significant period of time and after providing fresh *Miranda* warnings. The record shows that officer Gage read Hatley his *Miranda* warnings anew after Hatley had agreed to speak to him concerning the killings. There was a lapse of approximately two hours between 4:00 a.m., when Hatley refused to speak to police, and 6:00 a.m., when he spoke to officer Gage. In *Mosley*, the Supreme Court held that an interval of more than two hours constituted "the passage of a significant period of time." 423 U.S. at 106, 96 S.Ct. at 327. We of course cannot predict what length of time the Court will establish as the minimum interval necessary to satisfy the second *Mosley* factor. When viewed in the totality of the circumstances in which Hatley first exercised and then waived his right to remain silent, however, we cannot agree with Hatley's contention that the two-hour interval between his contacts with officer Stice and officer Gage was not a significant period of time. *See United States v. McClinton*, 982 F.2d 278, 282 (8th Cir.1993) (noting parenthetically that two hours is a significant amount of time).

As to the third factor, "this Court has previously held that a second interrogation is not rendered unconstitutional simply because it involves the same subject matter discussed during the first interview." *United States v. House*, 939 F.2d 659, 662 (8th Cir.1991); *accord, United States v. Finch*, 557 F.2d 1234, 1236 (8th Cir.), *cert. denied*, 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285 (1977). In *Finch*, we applied the *Mosley* criteria and "found no effort to wear down the defendant's resistance, and thus concluded that his right to cut off questioning had been scrupulously honored." *Jackson v. Wyrick*, 730 F.2d 1177, 1179 (8th Cir.) (discussing *Finch*, 557 F.2d at 1236), *cert. denied*, 469 U.S. 849, 105 S.Ct. 167, 83 L.Ed.2d 102 (1984).

The circumstances surrounding both of the police contacts with Hatley support the state court's finding that the authorities scrupulously honored Hatley's right to cut off questioning. This is not a case where the authorities "persisted in 'repeated efforts to wear down [the person's] resistance' in order to change the person's version of the facts." *McClinton*, 982 F.2d at 282 (quoting *Mosley*, 423 U.S. at 105–106, 96 S.Ct. at 327). Hatley was not locked in a single interrogation room after his invocation of his right to remain silent but was taken to his cell. Moreover, at the time of his contact with officer Gage, Hatley had been taken to another area of the police station to perform trace metal tests. Last, Gage had not been told what Hatley had said, but only that he "might not talk." *Hatley*, 709 S.W.2d at 813; *see McClinton*, 982 F.2d at 282 (second interviewer's unawareness of defendant's refusal to talk in first interview supports inference that Fifth Amendment rights were not violated). Thus, Hatley has failed to show that the police recontacted him with the sole purpose of inducing him to abandon his earlier assertion of *Miranda* rights. Consequently, the mere fact that Hatley's interview with officer Gage concerned that same subject matter as the earlier attempt to interview him does not render his confession inadmissible.

The district court's judgment is affirmed.