# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3056

_____

Phillip Brown,                          *
                                        *
                Appellant,              *
                                        *   Appeal from the United States
        v.                              *   District Court for the
                                        *   Eastern District of Missouri
Paul Caspari, Superintendent,           *
                                        *
                Appellee.               *

_____

Submitted:  March 9, 1999

Filed:    August 5, 1999

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
        SACHS,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

Phillip Brown appeals from a final order entered in the United States District
Court[2] for the Eastern District of Missouri denying his petition for habeas relief.
Brown v. Caspari, No. 4:96CV94JCH (E.D. Mo. June 4, 1998) (memorandum and

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western
District of Missouri, sitting by designation.

[2]The Honorable Jean C. Hamilton, Chief Judge, United States District Court for
the Eastern District of Missouri.

order). For reversal, petitioner argues that the district court erred in denying habeas relief because the state trial court admitted into evidence the confession he made to the police after he asserted his Fifth Amendment right to remain silent. For the reasons discussed below, we affirm the judgment of the district court.

## JURISDICTION

The district court had subject matter jurisdiction over this 28 U.S.C. § 2254 habeas petition under 28 U.S.C. §§ 1331, 1651. Petitioner filed a timely notice of appeal pursuant to Fed. R. App. P. 4(a) (notice of appeal in civil case), (c) (notice of appeal filed by inmate confined in an institution), and we have appellate jurisdiction under 28 U.S.C. § 1291.

## BACKGROUND FACTS

The following statement of facts is taken in large part from the district court memorandum and order and the state's brief. See memorandum and order at 3, 5 (citing findings of fact set forth in State v. Brown, 840 S.W.2d 247 (Mo. Ct. App. 1992) (per curiam) (memorandum and order at 2-3) (Resp. Exh. G in Brown v. Caspari, No. 4:93-CV-1955-JCH (FRB) (E.D. Mo. Dec. 12, 1994) (order dismissing habeas petition without prejudice)); Brief for Appellee at 1-3.

On October 14, 1988, shortly after 10:00 p.m., a man displaying a gun came out of the restroom of a fast food restaurant. He ordered the four restaurant employees into the walk-in cooler and ordered the restaurant's assistant manager to open the safe. The assistant manager did so and handed about $1,400 to the robber. The robber ordered the assistant manager to unlock the alarmed door and then go back inside the cooler. The robber left. The employees waited about five minutes, then they exited the cooler and called the police. Two weeks later, at about 10:30 p.m., the same man robbed the fast food restaurant again. The restaurant had just closed and the employees were

walking through the parking lot to their cars. The robber approached the assistant manager with a gun and ordered her to give him the bank deposit bags. The assistant manager did so; the bank deposit bags contained about $1,300. The robber ran down the street. The assistant manager called police.

The police investigated the robberies and arrested petitioner on January 28, 1989. (It is not clear from the briefs why or how the police came to suspect petitioner was the robber.) The police arrested petitioner at about 3:40 p.m. Police officer Jefferson read petitioner the Miranda[3] warnings and handed him a written waiver form. Petitioner told Jefferson that he did not want to talk to him and initialed the box on the form indicating that he did not wish to make a statement. Jefferson immediately ceased further interrogation and left the room, but he did not tell Sgt. McMullin or Detective Sneid that he had read petitioner the Miranda warnings or that petitioner had asserted his right to remain silent. Three hours later, at about 6:50 p.m., McMullin and Sneid approached petitioner, read him the Miranda warnings again and resumed questioning him about the robberies. This time petitioner agreed to talk and admitted that he had committed both robberies and that he had used a gun during each robbery. He also made a tape-recorded statement.

Petitioner was charged with two counts of first degree burglary and two counts of armed criminal action. Pre-trial motions to suppress were denied, and the taped confession was admitted into evidence and played for the jury. Petitioner testified in his own defense at trial. He admitted his involvement in the robberies but testified that the robberies had been "set up" by one of the restaurant employees and therefore were not really robberies. The jury found petitioner guilty on all four counts. The state trial court sentenced petitioner as a "prior and persistent offender" to a total of 25 years imprisonment. His conviction and sentence and the denial of of post-conviction relief

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

were affirmed on direct appeal. State v. Brown, 840 S.W.2d 247 (order) (decided under former procedure in which direct appeal and post-conviction relief proceeded separately but simultaneously and then were consolidated for purposes of appellate review).

In January 1996 petitioner filed this habeas petition in federal district court. As noted by the district court, the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, does not apply to this case because it was filed before April 24, 1996, the effective date of the Act. See memorandum and order at 2. Petitioner raised three grounds for relief: (1) violation of his Fifth Amendment right to remain silent (interrogation about the same crimes following his assertion of right to remain silent), (2) ineffective assistance of trial counsel (for failing to investigate his allegation that police officers physically coerced his confession by beating him), and (3) ineffective assistance of appellate counsel (for failing to argue on appeal that petitioner's sentence was improperly enhanced based on a 1981 Federal Youth Corrections Act (FYCA) conviction).

The district court found that there was no violation of petitioner's right to remain silent and that his confession was admissible because the police stopped the first interrogation once petitioner invoked his right to remain silent and interrogation only resumed after the passage of a "significant period of time" (three hours later) and after a "fresh" set of Miranda warnings, and, even though the second interrogation involved the same crime or crimes, there was "no effort to wear down [petitioner's] resistance" and the police did not recontact petitioner "with the sole purpose of inducing him to abandon his earlier assertion of Miranda rights." See id. at 5, citing Michigan v. Mosley, 423 U.S. 96, 104-06 (1975), and Hatley v. Lockhart, 990 F.2d 1070, 1074 (8th Cir. 1993) (citations omitted). The district court also found no ineffective assistance of either trial or appellate counsel. See id. at 5-9 (finding trial counsel did investigate petitioner's medical records but concluded that there was not a sufficient factual basis for the physical coercion claim and that in any event such a claim was inconsistent with

-4-

the theory of defense that the robberies were "inside jobs" and that appellate counsel could not have raised the FYCA issue on direct appeal because it had not been objected to at trial or in the motion for new trial or shown to have been set aside pursuant to 18 U.S.C. § 5021). The district court granted a certificate of appealability limited to ground I (the right to remain silent ground). This appeal followed.

## DISCUSSION

We review the district court's conclusions of law de novo and the factual findings for clear error. See, e.g., Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988) (en banc), cert. denied, 490 U.S. 1040 (1989). The state courts' factual findings are entitled to a presumption of correctness. See, e.g., Sumner v. Mata, 449 U.S. 539, 545 (1981); Jones v. Jones, 938 F.2d 838, 843 (8th Cir. 1991) (applying presumption of correctness to findings made after complete review of transcript and evidenced in written appellate opinion).

Petitioner argues that the district court erred in finding that the police did not obtain his confession in violation of his Fifth Amendment right to remain silent. Petitioner argues that the police did not "scrupulously honor" his assertion of the right to remain silent. He argues instead that the police ignored his assertion of the right to remain silent and his repeated requests for an attorney and physically coerced his confession by beating him.[4] He specifically argues that the second interrogation was

_____

[4]The district court considered this claim only in terms of the right to remain silent. In his brief filed in the state court of appeals, petitioner argued that his confession was unconstitutional because the police ignored his earlier assertion of the right to remain silent. He did not argue that the police ignored his request for an attorney or physically coerced him. See Brief for Appellant at 9-12 (filed in State v. Brown, 840 S.W.2d 247 (Mo. Ct. App. 1992) (per curiam) (order) (Resp. Exh. E-1 in Brown .v Caspari, No. 4:93-CV-1955-JCH (FRB) (E.D. Mo. Dec. 12, 1994) (order dismissing habeas petition without prejudice)). The state court of appeals noted that

unconstitutional because it involved the <u>same</u> subject matter discussed during the first interrogation. <u>Michigan v. Mosley</u> is the key case involving continued questioning after an initial refusal to answer questions. Petitioner distinguishes <u>Michigan v. Mosley</u> on the ground that in that case the second interrogation involved a <u>different</u> crime, whereas, here, the second interrogation involved the <u>same</u> crime or crimes. We disagree.

> "The admissibility of statements obtained after a person in custody has decided to remain silent depends on whether his [or her] right to cut off questioning has been 'scrupulously honored.'" In [<u>Michigan v.</u>] <u>Mosley</u>, the Supreme Court relied on three factors to determine whether the police had scrupulously honored the defendant's right of silence: (1) whether the police immediately ceased the interrogation upon defendant's request; (2) whether they resumed questioning only after the passage of a significant period of time and provided a fresh set of <u>Miranda</u> warnings; and (3) whether they restricted the later interrogation to a crime that had not been the subject of the first interrogation.

<u>Hatley v. Lockhart</u>, 990 F.2d at 1073-74 (citations omitted).

---

Jefferson and Sneid testified that they "did not threaten, physically abuse or in any way mistreat [petitioner] to coerce him to waive his <u>Miranda</u> rights." <u>State v. Brown</u>, 840 S.W.2d 247 (memorandum opinion at 5). At the suppression hearing and at trial Sneid testified that, when he left the interview room briefly to get a tape recorder, petitioner had already confessed to committing the robberies and, when he returned, he did not see any signs or indication that anyone had abused or mistreated petitioner. <u>State v. Brown</u>, No. 591181 (Mo. Cir. Ct. County of St. Louis Sept. 11, 1989) (transcript of suppression hearing at 31) (Resp. Exh. A in <u>Brown v. Caspari</u>, No. 4:93-CV-1955-JCH (FRB)); <u>id.</u> (Sept. 12, 1989) (transcript of trial at 229-30) (Resp. Exh. A (vol. I) in <u>Brown v. Caspari</u>, No. 4:93-CV-1955-JCH (FRB)).

Applying the Michigan v. Mosley factors, we hold the second interrogation did not violate petitioner's Fifth Amendment right to remain silent. First, it is not disputed that the police immediately ceased the interrogation after petitioner invoked his right to remain silent. Second, the police resumed questioning petitioner slightly more than three hours later, an interval which the Supreme Court characterized as a "significant period of time" in Michigan v. Mosley, 423 U.S. at 106, and only after providing him a fresh set of Miranda warnings. What is in dispute is the third Mosley factor because the second interrogation involved the same crime or crimes and not a different crime as was the case in Michigan v. Mosley. However, the state argues correctly that this court has repeatedly held that "a second interrogation is not rendered unconstitutional simply because it involves the same subject matter discussed during the first interview." United States v. House, 939 F.2d 659, 662 (8th Cir. 1991).

Hatley v. Lockhart, 990 F.2d at 1073-74, involved facts similar to those in the present case. In that case the police arrested the defendant at 4:00 a.m. and read him the Miranda warnings. The defendant told the police that he did not wish to say anything. The police immediately terminated their questioning and took the defendant to a cell. Two hours later, at about 6:00 a.m., the police took the defendant out of his cell for certain tests. Another police officer, who had been told only that the defendant "might not talk," identified himself to the defendant, told the defendant that he was "in a lot of trouble," and then asked the defendant if he "wanted to tell [him] about it." The defendant agreed to talk and, after Miranda warnings, made an incriminating statement. "With respect to the first [Michigan v.] Mosley factor, the police immediately ceased the interrogation upon [the defendant's] request." Id. at 1074. "Under the second [Michigan v.] Mosley factor, . . . the police resumed questioning after the passage of a significant period of time and after providing fresh Miranda warnings." Id. However, the second interrogation involved the same subject matter discussed during the first interrogation. See id. The court held that the fact that the second interrogation involved the same subject matter as the first did not mean that the second interrogation was unconstitutional. See id. The surrounding circumstances

-7-

indicated that the police had "scrupulously honored" the defendant's right to remain silent. See id. The court noted there was no effort to wear down the defendant's resistance and the police had not recontacted him with the sole purpose of inducing him to abandon his earlier assertion of his Miranda rights. See id.

In the present case, as in Hatley v. Lockhart, the fact that the second interrogation involved the same subject matter as the first interrogation did not mean that the second interrogation was unconstitutional. The circumstances surrounding the first and second interrogations support the findings of the state courts and the district court that the police "scrupulously honored" petitioner's right to remain silent. There was no showing of repeated efforts by police to wear down petitioner's resistance or to induce him to abandon his earlier assertion of his right to remain silent. The first interrogation ceased immediately after petitioner asserted his right to remain silent; the second interrogation resumed three hours later, after another set of Miranda warnings, and was conducted by officers who did not know that petitioner had earlier asserted his right to remain silent. See United States v. McClinton, 982 F.2d 278, 282 (8th Cir. 1993) (holding fact that second interviewer was unaware of defendant's refusal to talk in first interview supported inference that no Fifth Amendment violation).

In sum, we hold that the fact that the second interrogation concerned the same subject matter as the first interrogation did not violate petitioner's Fifth Amendment right to remain silent. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-