Rodney BUNCH *v.* STATE of Arkansas

CR 01-326 57 S.W.3d 124

Supreme Court of Arkansas
Opinion delivered September 20, 2001

*James R. Wallace & Associates*, by: *Tammy L. Harris*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Rodney Bunch was convicted by a jury in the Pulaski County Circuit Court of four counts of aggravated robbery, three counts of theft of property, and one count of first-degree sexual abuse. Appellant was convicted as a habitual offender and sentenced to a term of life imprisonment under the enhanced sentencing statute, codified at Ark. Code Ann. § 5-4-501(d) (Repl. 1997). Appellant raises the following two points on appeal: (1) that the trial court erred in failing to suppress his custodial statement; and (2) that the sentence enhancement provision of section 5-4-501(d) is unconstitutional as applied to him. We find no error and affirm.

Appellant's convictions stem from an armed robbery of Salon MDC in Little Rock that occurred on July 16, 1998. According to witnesses, a man carrying a towel entered the salon and asked for directions to Chenal Parkway. This same man returned approximately ten to fifteen minutes later, wearing a different shirt, a red bandanna over his face, and carrying a gun in his hand. These witnesses later identified Appellant as the robber. After demanding that the people in the salon empty their purses, Appellant ordered the employees and customers to go to a back room in the salon. Appellant held one of the employees back, and while holding a gun to her forehead, ordered her to remove her clothing. He then reached his hand into the victim's panties, penetrating her vagina with his fingers. Soon after, Appellant fled the salon.

After a witness provided police with a temporary license plate number for the suspect's car, they were able to develop Appellant as a suspect in the Salon MDC robbery, as well as a string of other local robberies. On August 5, 1998, Detective Todd Armstrong of the Little Rock Police Department left one of his business cards

with Appellant's mother and asked that Appellant contact him. Appellant then contacted police, who informed him that they would like to talk to him about some robberies. After Appellant refused to come to the police station, authorities agreed to meet him at the intersection of Twelfth Street and Fair Park Boulevard. Armstrong, however, proceeded to the address where phone records indicated Appellant was located. After witnessing Appellant leave the house, Armstrong began to follow him. When Armstrong pulled up beside Appellant's car, he identified himself as a police officer and stated that he wanted to talk with Appellant. Appellant then accelerated, and a high-speed chase ensued for a short time until Appellant eventually slowed down and police pulled him over to the side of the road. At that time, police took Appellant into custody on outstanding traffic warrants.

Following his arrest, Appellant was placed in an interview room where Armstrong and Detective Lynda Keel attempted to question him with regard to the robberies. During this attempted interview, Appellant became belligerent and refused to answer any questions, or even state his name. Police officials then had him transported to the county jail at approximately 4:05 a.m on August 6. At approximately 5:00 p.m. on that same day, Appellant was brought back to police headquarters to again be questioned regarding the string of burglaries. Prior to this interview, Armstrong read Appellant his rights and obtained his signature on the waiver-of-rights form. According to Armstrong, Appellant was cooperative during this interview, and ultimately gave a tape-recorded statement detailing his involvement in the robberies.

Prior to his trial, an omnibus hearing was held to consider several pretrial motions filed by Appellant. In considering Appellant's motion to suppress his custodial statement, the trial court heard testimony from witnesses of the robbery, police officers involved in the investigation, and Appellant. During this hearing, Armstrong testified that Appellant appeared to understand the rights that were read to him, and did not seem to be under the influence of any drugs or alcohol. He also stated that Appellant never requested counsel during the interview, and denied that Appellant was ever subjected to physical threat or any form of coercion in an attempt to obtain a confession. Armstrong's testimony was corroborated by Keel. The only evidence offered by Appellant in support of his claim was his own testimony that the officers handcuffed him to a table in the interview room, and then hit him, cursed at him, and spit at him. According to Appellant, he made the incriminating statement because he feared that his life was

in imminent danger. After hearing all the testimony and arguments of counsel, the trial court denied Appellant's motion to suppress.

A jury trial was held on July 27, 2000, during which Appellant renewed his objection to the State's introduction of his custodial statement, and it was again denied. Appellant also filed a motion to declare section 5-4-501(d) unconstitutional as it applied to him. This same motion had been filed by Appellant in a prior, unrelated criminal proceeding. Both times, it was denied by the trial court. Appellant was convicted by the jury of aggravated robbery, theft of property, and first-degree sexual abuse and was sentenced to life imprisonment. This appeal followed.

## I. Suppression of Custodial Statement

For his first point on appeal, Appellant argues that the trial court erred in failing to suppress his custodial statement. Appellant alleges several different violations in support of suppression of that statement. First, he argues that the police questioned him after he invoked his right to remain silent in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Second, Appellant contends that his statement was not made voluntarily. Finally, Appellant contends that he did not knowingly and intelligently waive his rights under *Miranda*. Each of Appellant's arguments is without merit.

The proper standard of review for a motion to suppress was set forth by this court in *Wright v. State*, 335 Ark. 395, 983 S.W.2d 397 (1998):

> In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances, viewing the evidence in a light most favorable to the State, and we reverse only if the ruling is clearly against the preponderance of the evidence. *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998). The credibility of witnesses who testify at a suppression hearing about the circumstances surrounding the appellant's in-custody confession is for the trial judge to determine, and we defer to the superior position of the trial judge in matters of credibility. *Id.* Conflicts in the testimony are for the trial judge to resolve, and the judge is not required to believe the testimony of any witness, especially that of the accused since he or she is the person most interested in the outcome of the proceedings. *Id.*

*Id.* at 403-04, 983 S.W.2d at 401.

## 1. Right to Remain Silent

■ The issue of admissibility of statements obtained after a person has previously decided to remain silent was addressed by the United States Supreme Court in *Michigan v. Mosley*, 423 U.S. 96, 104 (1975), wherein the Court held that the admissibility of such statements "depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' " (Footnote omitted.) The Court explained:

> A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt "fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored. . . ." 384 U.S., at 479. The critical safeguard identified in the passage at issue is a person's "right to cut off questioning." *Id.*, at 474. Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting.

*Id.* at 103-04.

■ This court first addressed this issue in *Hatley v. State*, 289 Ark. 130, 709 S.W.2d 812 (1986), and rejected a literal reading of *Miranda* that would require "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances." *Id.* at 133, 709 S.W.2d at 814 (quoting *Mosley*, 423 U.S. at 102). This court went on to explain:

> To "scrupulously honor" the defendant's "right to cut off questioning" means simply that once the defendant has invoked his right to remain silent, his will to exercise that right will remain undisturbed; there must be no attempt to undermine his will and he must be secure in the knowledge he is under no compulsion to respond to any questions. Such a determination will, of course, depend on the facts in each case relative to the conduct of the police and of the defendant.

*Id.* at 135, 709 S.W.2d at 815. Recognizing the *Mosley* court's distinction between interrogation after a request for counsel and

interrogation after refusing to make a statement, this court concluded that as long as there is no evidence of coercion, a statement made voluntarily will be admissible even though a defendant previously refused to answer questions. *Id.*

Based upon the particular facts of this case, we conclude that there was no evidence to indicate that police failed to "scrupulously honor" Appellant's "right to cut off questioning." Police initially attempted to question Appellant following his arrest on August 6, but due to Appellant's belligerent demeanor and refusal to answer questions, he was transported to the county jail. Approximately twelve hours lapsed before police again attempted to question Appellant. At that time, he was transported back to police headquarters and again placed in an interview room where he was given a meal and a soft drink. Prior to questioning Appellant, Armstrong informed him of his *Miranda* rights and obtained his signature on a waiver form. According to Armstrong, Appellant was fairly reserved and cooperative during this second interview. Armstrong also stated that at no time did Appellant request an attorney.

The only evidence that Appellant felt compelled to answer questions was his own self-serving testimony that he was subjected to physical threats by the officers. As previously stated, where there is a conflict in the testimony regarding the taking of a custodial statement, it is within the province of the trial court to resolve the issue of the credibility of witnesses. *Branscum v. State*, 345 Ark. 21, 43 S.W.3d 148 (2001); *Wright*, 335 Ark. 395, 983 S.W.2d 397. In addition, the trial judge is not required to believe the testimony of any witness, particularly that of the accused since he or she is the person most interested in the outcome of the proceedings. *Id.*

Finally, the fact that both interrogations focused on the same crime, the armed robbery of Salon MDC, is irrelevant in our analysis of this issue. This court stated in *Hatley*, 289 Ark. 130, 709 S.W.2d 812, that the Supreme Court's emphasis on interrogation about a different crime was misplaced. Rather, the primary consideration is the "strict adherence to its dictates of scrupulously honoring the defendant's right to remain silent." *Id.* at 135, 709 S.W.2d at 815. *See also Wright*, 335 Ark. 395, 983 S.W.2d 397. We therefore conclude that there was no violation of Appellant's constitutional rights because the police scrupulously honored Appellant's initial request to remain silent.

## 2. *Voluntariness of Custodial Statement*

 Next, we turn to Appellant's allegation that his statement was not voluntary. The law regarding voluntariness of a confession was set out by this court in *Wright*, 335 Ark. 395, 983 S.W.2d 397:

> A custodial confession is presumptively involuntary and the burden is on the State to show that the waiver and confession was voluntarily made. *Clark v. State*, 328 Ark. 501, 944 S.W.2d 533 (1997). In examining the voluntariness of confessions, this court makes an independent determination based on the totality of the circumstances, and reverses the trial court only if its decision was clearly erroneous. *Kennedy v. State*, 325 Ark. 3, 923 S.W.2d 274 (1996). As explained in *Mauppin v. State*, 309 Ark. 235, 831 S.W.2d 104 (1992), the inquiry into the validity of the defendant's waiver has two separate components: whether the waiver was voluntary, and whether the waiver was knowingly and intelligently made. In determining voluntariness, we consider the following factors: age, education, and intelligence of the accused, lack of advice as to his constitutional rights, length of detention, the repeated and prolonged nature of questioning, or the use of physical punishment. *Hood v. State*, 329 Ark. 21, 947 S.W.2d 328 (1997). Other relevant factors in considering the totality of the circumstances include the statements made by the interrogating officer and the vulnerability of the defendant. *Id.* In addition, the accused must have a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it in order for his waiver to be knowingly and intelligently made. *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996).

*Id.* at 407-08, 983 S.W.2d at 403 (quoting *Davis v. State*, 330 Ark. 76, 83-84, 953 S.W.2d 559, 562-63 (1997)).

Here, Armstrong testified that Appellant told him that he had completed the eleventh grade, had received his GED, and could read and write. Armstrong also stated that Appellant, who was calm during the second interrogation, did not appear to be under the influence of any drugs or alcohol. In addition, the second interrogation lasted only twelve minutes.

 Appellant testified that he only confessed after being physically abused. This testimony was disputed by both Armstrong and Keel. Appellant also stated that Armstrong did not advise him

of his rights until after he had already given his statement. The tape recording of Appellant's statement, however, indicates that at the beginning of the interview Armstrong asked Appellant if he had been informed of his rights and Appellant responded affirmatively. Moreover, Armstrong inquired at least three separate times if Appellant understood those rights and each time Appellant stated that he did understand them. Again, resolving the credibility of witnesses was a matter within the province of the trial court. *See Wright*, 335 Ark. 395, 983 S.W.2d 397. Considering the totality of the circumstances, we conclude that Appellant's custodial statement was given voluntarily.

### 3. Knowing and Intelligent Waiver

Finally, Appellant contends that his statement should have been suppressed because he did not knowingly and intelligently waive his *Miranda* rights. Appellant never raised this specific argument below, nor did the trial court ever rule on such an allegation. It is well settled that where an appellant does not advance an argument to the trial court as part of the motion to suppress, we will not consider it for the first time on appeal. *See McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001); *Stephens v. State*, 342 Ark. 151, 28 S.W.3d 260 (2000), *cert. denied*, ___U.S. ___, 121 S. Ct. 1206 (2001). Accordingly, we affirm the trial court's ruling to admit Appellant's statement.

### II. Section 5-4-501(d)(1) Unconstitutional

For his final point on appeal, Appellant argues that section 5-4-501(d)(1)(A) impermissibly conflicts with the provisions of Ark. Code Ann. § 5-4-501(d)(3)(A) (Repl. 1997), thus depriving him of his constitutional rights. Subsection 5-4-501(d)(1)(A) calls for the imposition of a life sentence for a defendant convicted of a specified felony who has been previously convicted of two or more such felonies, while subsection 5-4-501(d)(3)(A) allows for a statutory sentencing range. Appellant raised this identical argument in a previous appeal stemming from an unrelated criminal conviction. *See Bunch v. State*, 344 Ark. 730, 43 S.W.3d 132 (2001). We reject Appellant's argument on this point for the same reasons announced in that previous appeal, and we affirm the trial court's ruling that the statute is not unconstitutional.

*III. 4-3(h) Review*

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules, the transcript of the record before us has been reviewed for adverse rulings objected to by Appellant but not argued on appeal, and no reversible errors were found. Accordingly, the judgment of conviction is affirmed.