# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2026

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of North Dakota. |
| Joseph DeMarce, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 11, 2009
Filed: April 30, 2009

_____

Before LOKEN, Chief Judge, MELLOY and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Joseph C. DeMarce of attempted aggravated sexual abuse and attempted sexual abuse of a minor, 18 U.S.C. § 2241(a), (c). The district court imposed a sentence of 360 months, the statutory minimum under the Adam Walsh Child Protection and Safety Act of 2006. DeMarce appeals, alleging trial and sentencing error. Jurisdiction being proper under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court affirms.

# I.

On June 27, 2007, Joseph DeMarce visited his brother's home on the Spirit Lake Reservation. Around 4:00 am, he left the residence with his 11-year-old niece, D.D., in his brother's truck. They drove to the pow-wow grounds where DeMarce got into the back seat with D.D., and tried to kiss her. She pushed him away. He pushed her down on her back, and placed his hands on her stomach and legs. He pulled her shorts and underwear down to her knees. She pushed him away, sat up, and pulled up her shorts and underwear. DeMarce then grabbed her arms, and hit her in the face about 10 times. He pulled her shorts down again. D.D. pulled them up a second time. She screamed; DeMarce "snapped out of it." He drove her home, told her that he was "really sorry," and "was going to go to jail for a very long time." After dropping her off, DeMarce turned himself in to the Lake Region Law Enforcement Center (LRLEC).

At home, D.D. woke her mother to explain the blood on her face. She initially fabricated a story about how she tripped and hit her lip. Minutes later, she told her mother what really happened.

The same day, agents Wind and Thompson of the FBI visited DeMarce at the LRLEC. They advised him of his *Miranda* rights. After an initial question about the incident with his niece, DeMarce said, "You know, I don't want to talk to you. I'm not going to sign nothing," and walked out of the room. Questioning ceased immediately.

On July 6, the agents returned. Agent Wind asked DeMarce if he "was ready to talk." DeMarce responded by asking what charges were being brought against him. The agents told him about the charges. After being read his *Miranda* rights, he admitted, "I was trying to rape my niece." DeMarce, however, claims he initially told the agents that he still did not want to talk about the incident because he "wanted to

-2-

forget it" and "was a monster." He alleges he made the admission only after agent Wind told him that he would have to talk about the incident eventually, and "people make mistakes."

## II.

DeMarce argues that the district court committed trial error by: 1) denying his motion to suppress incriminating statements; 2) admitting hearsay testimony; 3) denying the motion for judgment of acquittal; and 4) failing to submit a jury instruction.

## A.

DeMarce contends that his statements to the agents should be suppressed as a violation of his Fifth Amendment right to remain silent. On appeal from the denial of a motion to suppress, this court reviews a district court's findings of facts for clear error and its legal conclusions de novo. *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007); *United States v. Plumman*, 409 F.3d 919, 924 (8th Cir. 2005). An order denying suppression may be reversed if it is "unsupported by substantial evidence, reflects an erroneous view of the applicable law, or leaves [the court] with a firm and definite conviction that in light of the whole record a mistake has been made." *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004). Whether a person invoked his right to remain silent is a factual question for the district court, reviewed for clear error. *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007).

DeMarce argues that he invoked his right to remain silent at the June 27 interrogation. "A suspect invokes his right to remain silent by making 'a clear, consistent expression of a desire to remain silent.'" *Id*., *citing United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989). "Being evasive and reluctant to talk is different from invoking one's right to remain silent." *Ferrer-Montoya*, 483 F.3d at 569. At the suppression hearing, Agent Wind testified that DeMarce said, "You

know, I don't want to talk to you. I'm not going to sign anything," and walked out of the room. The district court found that "this [was] not a clear invocation of the right to remain silent but merely reflects that Demarce declined to answer Wind's questions or was reluctant to talk at that time." This is clear error. DeMarce's statements and conduct evince a direct, unambiguous, and unequivocal intention to remain silent.

Even so, this court concludes that the motion to suppress was properly denied because DeMarce's right was scrupulously honored. *See United States v. Hogan*, 539 F.3d 916, 922 (8th Cir. 2008) ("An error is harmless if it does not affect substantial rights of the defendant and did not influence or had only a slight influence on the verdict."). In determining whether a defendant's right to silence is "scrupulously honored," this court considers three factors: 1) whether the initial interrogation ceased immediately upon the defendant's request; 2) whether a significant period had passed and fresh *Miranda* warnings were given before resuming questioning; and 3) whether the later interrogation is restricted to a crime that was not the subject of the first interrogation. *Hatley v. Lockhart*, 990 F.2d 1070, 1073-74 (8th Cir. 1993), *citing Michigan v. Mosley*, 423 U.S. 96, 104 (1975).

First, it is undisputed that the agents ceased questioning immediately upon DeMarce's request on June 27. Second, questioning was not resumed for nine days, and fresh *Miranda* warnings were given. *See Hatley*, 990 F.2d at 1074 (holding that more than two hours is a "significant period of time"), *quoting Mosley*, 423 U.S. at 106. Third, although the subject matter of the interrogations was the same, "a second interrogation is not rendered unconstitutional simply because it involves the same subject matter discussed during the first interview." *Hatley*, 990 F.2d at 1074, *quoting United States v. House*, 939 F.2d 659, 662 (8th Cir. 1991). Most importantly, there was "no effort to wear down the defendant's resistance." *Hatley*, 990 F.2d at 1074, *citing Jackson v. Wyrick*, 730 F.2d 1177, 1179 (8th Cir. 1984). After DeMarce refused to make a statement at the initial interrogation, the agents "did not attempt to persuade [him] to reconsider or to resume the interrogation." *United States v. Finch*,

557 F.2d 1234, 1236 (8th Cir. 1977). DeMarce's right to silence was "scrupulously honored," and the district court properly denied the motion to suppress.

DeMarce asserts that he also invoked his right to remain silent at the July 6 interrogation. He alleges that he again told the agents that he did not want to talk about the incident because he "wanted to forget it" and "was a monster." He made the admission only after agent Wind told him that he would have to talk about the incident eventually, and "people make mistakes." The government claims that DeMarce asked what charges were being brought against him, and made a brief statement after being read his *Miranda* rights. After his statement, DeMarce stated that he "didn't want to talk about it anymore." Given the disputed testimony, the district court did not clearly err by finding that DeMarce did not invoke his right to silence at the July 6 interrogation. *See **United States v. Allmon***, 500 F.3d 800, 806 (8th Cir. 2007) ("A district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility.").

DeMarce also argues that the statements quoted above are like a "Christian burial speech," used to overcome his right to silence. *See **Brewer v. Williams***, 430 U.S. 387, 399 (1977) (holding detective's religious-based statements to suspect were tantamount to interrogation despite absence of direct questioning). The district court did not err in finding that the agents' statements here did not improperly play on the defendant's religious and emotional state.

B.

DeMarce argues that the district court erred by admitting the hearsay testimony of D.D.'s mother. This court reviews a district court's evidentiary rulings for abuse of discretion. *See **United States v. Love***, 521 F.3d 1007, 1009 (8th Cir. 2008).

At trial, the defense objected to the mother's testimony about what D.D. told her on the night of the assault. Without a limiting instruction, the district court admitted the following testimony as "either nonhearsay under [Federal Rule of Evidence] 801(d) or . . . as a statement of how [D.D.] came to be in the condition that she was":

Q: Back to the morning of June 27th, when you went to bed at 2:30, did you sleep through the entire evening?

A: Yes. Or until my daughter woke me up.

Q: And what time was that?

A: About 4:30.

Q: And what happened then?

A: First she came into the room and said she fell in the hallway when she tried to go to the bathroom and she hit her lip. So I looked at it and told her to go wash up and to go back to bed. And then on her way out she said: I think Uncle Joe took off with the truck. So I got up and went out and looked and the truck was gone. And then I called his mother to see if he had gone out there, and she said she hasn't seen him. So I told [D.D.] to wash up and get ready to go back to bed. And then I went back into my room to wake up my husband, and that's when my daughter came back in and she told me what really happened.

Q: And what did she tell you really happened?

A: She said: I'm sorry, Mom. I lied. I didn't mean to lie to you. And I said: Well, what do you mean you lied? She said: I didn't fall in the hallway. She said: Uncle Joey did this to me. And I said: Well, what do you mean? And then she said: Well, he hit me. And I was like: Well,

-6-

why did he do that?  She said: He took me out of the house and tried to rape me, she said.  And then I asked her: What do you mean he took you out of the house?  And then that's when she said that he took her behind the house to the pow-wow grounds.

. . . .

Q: And did she tell you why she went to the pow-wow grounds with him?

A: She said her – she said that Joe woke her up, because she was sleeping on the couch.  Joe woke her up and said he wanted to lay down.  So she got up – she got up.  She was going to go lay in her room, but then she decided to bring her mattress out to the living room and lay on the floor.  And then she said she was trying to go back to bed and Joe woke her up again and wanted to know if she wanted to watch a movie, so she said yeah, and so he put on I think it was Happy Feet or something like that.  He put on the movie for her.  She said she kept trying to go back to bed, and then he – she said that he was acting like he was talking on the phone.

. . . .

Q: And how did she perceive that he was acting like he was talking on the phone?

A: Well, he was using my husband's cell phone, and it's very hard to get a cell phone signal in our house unless you're standing in a certain part of the house.  And then she said that he was walking around talking on the phone, and she said that he was acting like he was talking to her other uncle, Tom.

On appeal, the government concedes that the testimony is inadmissible under Rule 801(d).[1]  The other basis for the court's admission of the testimony was as a "statement of how [D.D.] came to be in the condition that she was."  Federal Rule of Evidence 803(3) permits the admission of statements concerning "the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed."  Limited portions of the mother's testimony are based upon D.D.'s statements concerning her physical state – she was bleeding because Joseph DeMarce hit and tried to rape her.  Those statements were properly admitted.  This court concludes that the remaining testimony of the mother, however, does not recount statements of D.D.'s present condition, but states D.D.'s memory.  The testimony should not have been admitted under Rule 803(3).

This court is not bound by the grounds on which the district court admitted the evidence.  *See **United States v. Levine***, 477 F.3d 596, 601 (8th Cir. 2007) ("[I]t is well-settled principle that we may affirm a district court's judgment on any basis supported by the record."), *quoting **United States v. Pierson***, 219 F.3d 803, 807 (8th Cir. 2000).  The government argues that the testimony is admissible as "preliminary information concerning the origin of an investigation."  *See **United States v. Kenyon***, 481 F.3d 1054, 1063 (8th Cir. 2007) (*Kenyon II*).  Where testimony is offered for res gestae purposes to explain the origin of an investigation, this court has admitted the statements as not hearsay. *See **United States v. Running Horse***, 175 F.3d 635, 637-38 (8th Cir. 1999).  In *Running Horse*, the defendant objected to the testimony of the victim's band teacher and social worker.  The court permitted the band teacher to testify that the victim first reported sexual abuse to her, and that the social worker

---

[1] The exclusion from hearsay provided by Rule 801(d) is limited to statements offered to rebut a charge of recent fabrication or improper influence or motive.  *See **United States v. Kenyon***, 397 F.3d 1071, 1079-81 (8th Cir. 2005) (*Kenyon I*).

assigned to handle the case removed the victim from her home. The court held that "the trial court did not admit the testimony for the truth of the matter asserted, which would make the statements hearsay, but admitted them as background information to assist the jury in understanding the origin of the investigation of [the defendant]." *Id*. at 638.

The mother's testimony exceeded the rule in *Running Horse*: "Preliminary information concerning the origin of an investigation, admitted only for that purpose, is not hearsay." *Id*. The mother's testimony was not restricted to the reason why she contacted the police. This court concludes that her statements were admitted for the truth of the matter asserted, and were not admissible as background information.[2]

The government also argues that the mother's testimony is admissible under the excited-utterance hearsay exception. The rule admits hearsay that is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." **Fed. R. Evid. 803(2)**. "The rationale of the excited utterance exception is that 'the stress of nervous excitement or physical shock stills the reflective faculties, thus removing an impediment to truthfulness.'" *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999) (internal quotations omitted), *quoting United States v. Sewell*, 90 F.3d 326, 327 (8th Cir. 1996); *see also* **Fed. R. Evid. 803(2) advisory committee's notes** ("The theory of Exception [paragraph] (2) is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances

---

[2] There was no limiting instruction as to the mother's testimony. In *Running Horse*, this court noted that "the trial court instructed the jury that [the disputed] testimony was not offered to prove that the matters reported had occurred." *Id*.; *cf*. *Kenyon II*, 481 F.3d at 1063 (concluding that hearsay testimony could be admitted as "preliminary information concerning the origin of an investigation" despite lack of a limiting instruction because it was "unlikely that the jury gave it greater effect").

free of conscious fabrication."). In this case, D.D. initially fabricated a story about how she tripped when she told her mother how she became bloodied. Minutes later, she returned and told her mother the truth. This court concludes that D.D.'s statements demonstrate a level of reflection that prohibit their admission as an "excited utterance."

As no hearsay exception applies, the district court abused its discretion in admitting the mother's testimony. However, this court "will not reverse an erroneous evidentiary ruling if the error was harmless." *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir. 2008). An evidentiary error is harmless when, after reviewing the entire record, this court determines that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict. *See McPike*, 512 F.3d at 1055. "In other words, we will reverse only if the jury may have been substantially swayed by the improperly admitted evidence." *United States v. Marrowbone*, 211 F.3d 452, 455 (8th Cir. 2000).

The government argues that any hearsay testimony by the mother was cumulative of D.D.'s testimony. *See United States v. Bercier*, 506 F.3d 625, 632-33 (8th Cir. 2007) ("Prior consistent statements of a trial witness are necessarily cumulative – they reiterate the witness's trial testimony. Thus, we have held in more than one case that admitting prior consistent statements that 'merely bolstered a witness's credibility by repeating testimony already in evidence' was harmless error."). *Id*. at 633. This court has recognized that "[t]here could be circumstances, however, where that extra helping of evidence can be so prejudicial as to warrant a new trial." *Id*., *quoting United States v. Ramos-Caraballo*, 375 F.3d 797, 802-03 (8th Cir. 2004). In *Bercier*, the district court improperly admitted the hearsay testimony of a physician recounting the victim's statements. This court ordered a new trial, finding the hearsay prejudicial based upon two "determinative factors": 1) the prosecution turned entirely on the credibility of the victim; and 2) the hearsay

confirmed the victim's description of the incident and included accusations about the defendant's prior history of abuse. *Bercier*, 506 F.3d at 633.

The present case is distinguishable from *Bercier*. This case did not turn on D.D.'s credibility; nor was D.D. and her mother's testimony the sole basis for DeMarce's conviction – the district court properly admitted Demarce's admission that he tried to rape his niece. Also, the mother's testimony did not include any improper accusations of prior abuse by DeMarce. Reviewing the entire record, this court concludes that the hearsay testimony "did not influence or had only a slight influence on the verdict." *McPike*, 512 F.3d at 1055; *see also Ramos-Caraballo*, 375 F.3d at 807 ("[W]e cannot say that these [evidentiary] issues were central to or even marginally impacted on the jury's finding of guilt.").

C.

DeMarce argues that the court erred in denying his motion for judgment of acquittal. This court reviews the denial of the motion de novo. *See United States v. Sturdivant*, 513 F.3d 795, 800 (8th Cir. 2008). "Viewing the evidence most favorably to the government, resolving evidentiary conflicts in the government's favor, and accepting all reasonable inferences from the evidence supporting the jury's verdict, this court affirms if the evidence at trial is sufficient to sustain a conviction." *Id.*, *citing United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *United States v. Scott*, 64 F.3d 377, 380 (8th Cir. 1995).

DeMarce claims that the trial evidence failed to support a conviction of attempted aggravated sexual abuse and attempted sexual abuse of a minor. The requisite elements of attempt are: 1) an intent to engage in sexual abuse by knowingly attempting to cause the minor to engage in a sexual act; and 2) conduct constituting

a 'substantial step' toward the commission of the substantive offense which strongly corroborates the actor's criminal intent. *See* ***United States v. Wright***, 540 F.3d 833, 839 (8th Cir. 2008); ***United States v. Plenty Arrows***, 946 F.2d 62, 65 (8th Cir. 1991). A substantial step goes beyond "mere preparation" but may be less than the "last act necessary" before commission of the substantive crime. ***United States v. Mims***, 812 F.2d 1068, 1077 (8th Cir. 1987) (internal quotations omitted).

With regard to the first element, DeMarce argues that the government did not establish that he had the requisite specific intent to engage in a sexual act.[3] Relying heavily on *Plenty Arrows*, he asserts that there was no evidence that he attempted to touch D.D.'s body in violation of the "anatomically specific" statute. 946 F.2d at 65. In *Plenty Arrows*, the victim stated that Plenty Arrows touched him "from my back of my behind" with his penis. This court concluded that the testimony "lack[ed] the necessary specificity" to constitute a sexual act under the then-applicable 18 U.S.C. § 2245(2). ***Id***. After *Plenty Arrows*, Congress broadened the definition of "sexual act":

_____

[3] A "sexual act" for purposes of 18 U.S.C. §§ 2241 (a), (c) is defined by section 2246(2):

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger of by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

-12-

[W]hen *Plenty Arrows* was decided in 1991, "sexual act" required penetration or contact with the mouth. Today, however, the term "sexual act" is broader. Penetration is not required, as the definition of sexual act includes "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . ."

*Wright*, 540 F.3d at 840 (internal citations omitted). In this case, DeMarce pushed D.D. down on the back seat of the truck, placed his hands on her stomach and legs, and twice pulled her shorts and underwear down to her knees. He admitted that he was "trying to rape [his] niece." The evidence demonstrates that DeMarce intended to engage in a sexual act with D.D.

With regard to the second element of attempt, DeMarce alleges that the government did not prove a "substantial step" towards committing a sexual act with D.D. He invokes *Plenty Arrows* again, which held that "[t]here is no indication . . . that the placing of the penis against the 'back of [the victim's] behind' constituted a substantial step toward the completion of the crime of anal sodomy." 946 F.2d at 66; *see also* **United States v. Reddest**, 512 F.3d 1067, 1072 (8th Cir. 2008) (reversing conviction for penetration of the genital opening where testimony only established that defendant touched the outside of the victim's genitalia). *Plenty Arrows* and *Reddest* are inapplicable – both cases required penetration or contact with the mouth to sustain a conviction. As this court stated in *Wright*:

Unlike in *Plenty Arrows*, the government here did not need to establish Wright took a substantial step toward penetrating [the victim]. Wright's conviction stands if he took a substantial step toward the commission of "the intentional touching, not through the clothing, of the genitalia of" [the victim].

540 F.3d at 840. This case is also distinguishable from *United States v. Blue Bird*, 372 F.3d 989 (8th Cir. 2004). There, the court found insufficient evidence of a "substantial step" where the defendant and victim were "fully clothed," and the defendant "withdrew" after the minor indicated that she was not interested. *Id*. at 993. In this case, DeMarce twice pulled down D.D.'s underwear, and admitted that he tried to rape her. The evidence establishes that DeMarce's conduct constituted a "substantial step" toward committing a sexual act with D.D. This court concludes that the district court did not err in denying DeMarce's motion for judgment of acquittal.

D.

DeMarce also argues that the district court erred in denying a jury instruction. This court reviews "the rejection of a defendant's proposed instruction for abuse of discretion." *United States v. Meads*, 479 F.3d 598, 601 (8th Cir. 2007), *citing United States v. Gladney*, 474 F.3d 1027, 1032 (8th Cir. 2007). "The district court has broad discretion in formulating the jury instructions." *United States v. Johnson*, 278 F.3d 749, 751 (8th Cir. 2002). Reviewing the instructions as a whole, this court affirms if they "fairly and adequately submitted the issues to the jury." *Id*. at 752.

DeMarce proposed an instruction requiring that the jury agree on the sexual act he attempted to engage in with D.D. Citing *Plenty Arrows*, he claims the jury was required to find a specific sexual act of attempted abuse. DeMarce misinterprets *Plenty Arrows*. There, the court concluded that only certain specific acts satisfy the definition of a "sexual act," but it did not hold that jury instructions must be anatomically specific. *See Plenty Arrows*, 946 F.2d at 65-66. Contrary to DeMarce's argument, this court previously affirmed an attempted aggravated sexual abuse conviction where the jury instructions did not require agreement on a specific sexual act. *See Wright*, 540 F.3d at 840-41. In the present case, Jury Instructions Seven and Nine properly stated the essential elements of attempted aggravated sexual abuse and attempted sexual abuse. Jury Instruction 11 correctly defined "sexual act" under §

2246(2).  This court concludes that the jury instructions, taken as a whole, adequately state the law.

DeMarce does not establish trial error.  His conviction is affirmed.

III.

DeMarce argues that his sentence under the Adam Walsh Act violates his constitutional right to equal protection of the laws under the Fourteenth Amendment. The Act provides a 30-year mandatory minimum sentence for violations of 18 U.S.C. § 2241(c).  *See* **Pub. L. No. 109-248, 120 Stat. 587, 613** (codified as amended at 18 U.S.C. § 2241).  The constitutionality of a statute is reviewed de novo. ***United States v. May***, 535 F.3d 912, 915 (8th Cir. 2008).  "In reviewing a sentence challenged on equal protection grounds, we consider whether Congress 'rationally could have decided that the classification would further the statutory purpose.'" ***United States v. Curtis***, 965 F.2d 610, 615 (8th Cir. 1992), *quoting* ***United States v. Thomas***, 900 F.2d 37, 39 (4th Cir. 1990).

DeMarce argues that federal sexual abuse prosecutions have a disparate impact on Indians, and fail to satisfy the rational basis test.  The preamble of the Adam Walsh Act sets forth its purpose:

> To protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims.

**120 Stat. at 587**.  Congress intended to target sex offenders.  This court concludes that the penalties associated with the Act serve the purpose of deterring sex offenders, and are rationally related to Congress's objective of protecting children.  *See generally* ***United States v. Lemay***, 260 F.3d 1018, 1030 (9th Cir. 2001) (denying that changes to the Federal Rules of Evidence violated the equal protection rights of a Native American defendant); ***United States v. McHorse***, 179 F.3d 889, 897 (10th Cir. 1999)

(rejecting defendant's argument that federal sex crime prosecutions violated equal protection by disproportionately targeting Native Americans).  DeMarce's sentence did not violate his right to equal protection.

IV.

The judgment of the district court is affirmed.

_____