# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1236

_____

United States of America

*Plaintiff - Appellee*

v.

Joseph Brown, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 19, 2012
Filed: January 7, 2013

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Joseph Brown, Jr., was charged with attempted aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a) and 1153. Brown was convicted after a jury trial and sentenced to life imprisonment. Brown appeals his conviction, arguing that the

district court[1] erred in denying his motion for acquittal. Brown also argues that he was not afforded a fair trial due to the prosecutor's improper rebuttal remarks. We affirm.

I.

On the evening of August 17, 2009, Brown, Roseanne Redroad, and others were drinking alcohol and smoking marijuana at Redroad's home on the Spirit Lake Indian Reservation in North Dakota. At some point during the evening, Brown, Redroad, and several others went for a drive in Brown's vehicle. During the drive, Brown became angry, and the vehicle returned to Redroad's residence. After the other occupants exited the vehicle, Brown drove away with Redroad still in the car. Redroad had been drinking throughout the evening and had no recollection of taking a drive or being in Brown's car.

Redroad testified that the next thing she remembered was Brown pulling her out of the car by her hair. Brown took Redroad into a bedroom, threw her onto a bed, and told her "to take [her] clothes off now or he was going to." Redroad testified that she struggled with Brown for two hours, resisting his attempts to remove her clothing and trying to get away. During that time, Redroad stated that Brown pulled her pants down "like halfway," but that she pulled them back up. At some point during the struggle, Redroad escaped and hid outside underneath a tractor, but Brown found her, dragged her back into the bedroom, threw her on the bed, and choked her. Redroad testified that Brown again told her to "take your clothes off now or I'm going to."

Redroad testified that Brown eventually stopped struggling with her and that she asked if he would give her a ride home. Brown agreed and they both got in Brown's vehicle, but the car would not start. Redroad noticed that Brown appeared

___

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Judge for the District of North Dakota.

to be falling asleep, so she grabbed a cell phone from inside the vehicle and fled. Redroad ran until she felt it was safe to stop, then attempted to phone a relative. The phone went dead, and Redroad next called 911. She was unable to report her location, but the 911 dispatcher identified an approximate location using a GPS feature of the cell phone. Several Bureau of Indian Affairs officers responded and found Redroad on a gravel road about three miles from Brown's residence. The officers testified that Redroad was distraught, crying, and had messy hair. Redroad pointed towards Brown's residence and told an officer that Brown tried to rape her, but that she ran away. After placing Redroad into the police car, the officers proceeded to Brown's residence. Officers found him asleep inside the house, awakened him, and placed him under arrest for public intoxication.

Brown testified at trial and presented a different version of events. Brown admitted to drinking and smoking at Redroad's residence for most of the evening, but he denied sexually assaulting Redroad. Instead, Brown stated that after driving back to his home and falling asleep, he awoke to find Redroad attempting to remove his wedding ring from his finger. Brown stated that he grabbed Redroad, threw her out of his house, and then went back to sleep. He testified that he was awakened later by the officers and placed under arrest.

Brown subsequently was charged with attempted aggravated sexual abuse in violation of 18 U.S.C. § 2241(a). Counsel was appointed for Brown, and the case was tried before a jury. Brown moved for a judgment of acquittal at the conclusion of the Government's case-in-chief and again at the close of evidence. The district court denied both motions.

Brown had two prior convictions for rape, and the jury heard testimony from the victim of each of these prior offenses. During closing arguments, the Government said that "a tiger can't change his stripes or . . . a leopard can't change their spots. But in any event Joe Brown did what Joe Brown knows." Trial Tr. 308-09. This remark

came shortly before the end of the Government's rebuttal and was one of the final statements that the jury heard before the judge read the jury instructions. Brown's counsel did not object to the statement during closing arguments, and the judge, sua sponte, referenced the tiger stripes/leopard spots remark and issued an instruction stating that the jury could not convict Brown solely because of his prior similar acts. Trial Tr. 311. After the jury was excused to deliberate, Brown's counsel objected to the remark, but the district court denied any motion for mistrial.

The jury returned a verdict of guilty, and the district court sentenced Brown to life imprisonment. Brown now appeals his conviction.

II.

Brown presents two challenges to his conviction. First, he argues that there was insufficient evidence to support his conviction for attempted aggravated sexual abuse. Second, he argues that the Government's tiger stripes/leopard spots remark during closing denied him a fair trial.

A.

"We review challenges to the sufficiency of the evidence de novo, resolving all evidentiary conflicts in favor of, and accepting all reasonable inferences that support, the jury's verdict." United States v. Tucker, 689 F.3d 914, 918 (8th Cir. 2012). "While the evidence need not preclude every outcome other than guilty, we consider whether it would be sufficient to convince a reasonable jury beyond a reasonable doubt." United States v. Medearis, 380 F.3d 1049, 1060 (8th Cir. 2004). "Decisions regarding credibility of witnesses are to be resolved in favor of the jury's verdict." United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001) (quotation omitted).

Brown was convicted of attempted aggravated sexual abuse under 18 U.S.C. § 2241(a). Aggravated sexual abuse requires the defendant knowingly cause another person to engage in a sexual act by force or threat. See 18 U.S.C. § 2241(a). A "sexual act" includes various forms of contact between the offender and the victim's body; in this case, the sexual act required some form of intended sexual penetration of the victim.[2] See 18 U.S.C. §§ 2246(2)(A)-(C). Attempt liability requires (1) intent to commit a criminal action and (2) conduct amounting to a substantial step toward the crime. United States v. Kenyon, 481 F.3d 1054, 1067 (8th Cir. 2007).

Brown argues that the evidence supports, at most, a finding of physical assault, and that there is insufficient evidence that he took a substantial step toward the commission of a sexual act. We disagree. "A substantial step generally exists when a defendant takes actions necessary to the consummation of the crime that were of such a nature that a reasonable observer, viewing [the actions] in context could conclude . . . that [the actions were] undertaken in accordance with a design to commit the actual offense." United States v. Young, 613 F.3d 735, 743 (8th Cir. 2010), cert. denied, 131 S. Ct. 962 (2011) (quotation omitted). Redroad testified that Brown drove her to an isolated location, forced her onto a bed, demanded that she disrobe or he would do it for her, and attempted to remove her clothing when Redroad did not undress. Brown succeeded in pulling her pants halfway down at one point, but Redroad was able to pull them back up. Redroad testified that she struggled with Brown and attempted to flee, but that he pushed her back onto the bed and choked her. When Redroad briefly escaped the bedroom, Brown located her on his property and forcefully returned her to the bedroom. Brown then continued to hold Redroad down by her neck, again telling her to "take your clothes off now or I'm going to." These struggles continued for approximately two hours before Brown abruptly stopped. A

---

[2]Section 2246(2)(D), which defines "sexual act" to require only intentional touching and not penetration, is inapplicable here because the victim was at least 16 years old.

reasonable juror could have concluded that these actions constituted a substantial step towards the commission of a sexual act.

As for Brown's specific contention that the evidence establishes only a physical assault, this argument misses the mark. In this sufficiency challenge, the issue is not whether an alternative interpretation of the evidence is possible, but instead whether a reasonable jury could conclude that the evidence showed that Brown intended, and then took a substantial step, to commit aggravated sexual abuse. See United States v. White Bull, 646 F.3d 1082, 1089 (8th Cir. 2011). Here, Brown conceded intent to commit aggravated sexual abuse.[3] And, as discussed above, we believe that a reasonable juror could have concluded that Brown's conduct constituted a substantial step toward aggravated sexual abuse. Thus, we conclude that there was sufficient evidence to support Brown's conviction.

B.

Brown next argues that the tiger stripes/leopard spots remark by the Government during closing arguments constituted prosecutorial misconduct, and that he was denied a fair trial as a result. Although the denial of a motion for a new trial is generally reviewed for abuse of discretion, see United States v. Barrera, 628 F.3d 1004, 1007 (8th Cir. 2011), the Government argues that review here should be for plain error because Brown failed to object to the remark at trial. See Dixon v. Crete

---

[3]Brown did not challenge on appeal the sufficiency of the evidence regarding his intent to commit aggravated sexual abuse. Indeed, it appears Brown may have conceded intent at trial, as well. When moving for judgment of acquittal after the close of the Government's case, defense counsel stated "I think that the jury can infer intent from everything that they have heard." Trial Tr. 229.

Med. Clinic, P.C., 498 F.3d 837, 849 (8th Cir. 2007). Brown conceded at oral argument that plain error review applies,[4] so we adopt that standard of review here.

Under the plain error standard of review, we may only grant relief if Brown demonstrates (1) error, (2) that is plain, and (3) that affects Brown's substantial rights. United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). Even if these three prongs are satisfied, we should only exercise our discretion to correct plain error if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)). Plain error review places a heavy burden on the defendant, and accordingly we will "reverse only under exceptional circumstances." United States v. Darden, 688 F.3d 382, 388 (8th Cir. 2012) (quotation omitted).

"To obtain a reversal based on prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." United States v. Mullins, 446 F.3d 750, 757 (8th Cir. 2006). Neither prong is satisfied in this case. The district court interpreted the remark as a reference to Brown's *modus operandi*, rather than an encouragement to convict purely as the result of Brown's prior offenses. This interpretation was not plain error, and we conclude that it would not have been improper for the Government to suggest that Brown's prior sexual assaults shed light on his *modus operandi*. See Fed. R. Evid.

---

[4]Brown's counsel did not interrupt the Government's closing arguments to object to the remark, but he did object after closing arguments were completed and the jury was dismissed to deliberate. See Trial Tr. 312 ("I also do want to object to Ms. Morley's tiger stripe/leopard spot argument . . . . I didn't want to interrupt her closing."); see also United States v. Williams, 503 F.2d 480, 485 (8th Cir. 1974) ("[N]o timely objection was made to the prosecutor's argument either during *or after the completion of closing arguments* . . . ." (emphasis added)). However, because Brown conceded plain error review at oral argument, we need not reach the question of whether his objection was timely.

413 (in sexual assault cases, allowing evidence of defendant's commission of any other sexual assault to be considered "on any matter to which it is relevant").

Even if the remark was improper, it was not so prejudicial to Brown's substantial rights so as to deprive him of a fair trial. To determine prejudice in this context, the court looks to "(1) the cumulative effect of such misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) the curative actions taken by the trial court." See United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir. 1993) (quotation omitted). Here, none of these factors suggest prejudice warranting reversal. Since there was only a single remark, the cumulative impact of any misconduct was minimal. See id. at 947 (finding that "prosecutor's single expression of personal belief" during closing arguments was not prejudicial). Further, although the strength of the evidence in this case was not overwhelming, it was not so weak that a single remark by the Government could reasonably have affected the jury's verdict. See id. ("Reversal is in order only if the court determines that the jury verdict could reasonab[ly] have been affected by the argument." (quotation omitted)). Finally, even before defense counsel objected, the district court issued a curative instruction to the jury out of an abundance of caution. See Trial Tr. 311 (instructing the jury that "you cannot convict the defendant solely because he's committed a similar act in the past").

In sum, the district court did not commit plain error by denying Brown's request for a mistrial based on the tiger stripes/leopard spots remark, and even if it was plain error there was no effect on Brown's substantial rights. Thus, we affirm the district court's decision to deny a mistrial.

III.

Accordingly, we affirm.

_____

-8-