# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3202

_____

United States of America

*Plaintiff - Appellee*

v.

Robert Fool Bear, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: June 15, 2018
Filed: September 6, 2018

_____

Before KELLY, ARNOLD, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

Following a two-day trial, Robert Fool Bear, Sr., was convicted of Attempted Aggravated Sexual Abuse of a Child, Aggravated Sexual Abuse of a Child, Aggravated Sexual Abuse of a Child by Force, and Incest in Indian Country. He was sentenced to 360 months in prison. He now appeals.

# I.

Following an investigation by the Standing Rock Sioux Bureau of Indian Affairs and the Federal Bureau of Investigation, Fool Bear was charged with sexually abusing his minor niece. A grand jury returned a five-count indictment. Fool Bear proceeded to trial.

At trial, Fool Bear's niece testified that she and her brother moved into Fool Bear's home on the Standing Rock Sioux Indian Reservation after their father died when she was seven or eight years old. She lived with Fool Bear on and off until she was sixteen. **Count 1 (Attempted Aggravated Sexual Abuse of a Child):** She testified that one day—"[a]bout when [she] was ten"—she stayed home from school because she was sick. Fool Bear was the only other person home. She testified that he asked her to lie down with him in his bedroom. He took off his clothes and asked her to touch his penis and he touched her buttocks and rubbed her vagina. Fool Bear told her not to tell anyone. **Count 2 (Aggravated Sexual Abuse of a Child):** The niece testified that a couple of months later she was again home from school and went into the living room, looking for Fool Bear. She testified that Fool Bear then "grabbed [her] hand and he led [her] back into his bedroom." He started kissing her, "and then he kind of gently pushed [her] down onto the bed." Fool Bear removed both of their pants and underwear and inserted his penis into her vagina. She testified that it hurt and her vagina later bled as a result of this penetration. **Count 5 (Incest in Indian Country):** After that, "something like this" type of sexual conduct would happen "once or twice every month." **Count 3 (Aggravated Sexual Abuse of a Child by Force):** She described one last sexual encounter, which occurred in October or November 2015 when she was sixteen. She said that Fool Bear "had laid [her] on the bed and had started taking advantage of [her]." Shortly thereafter, she reported the ongoing sexual abuse to her aunt.

After trial, the jury convicted Fool Bear on four of the five counts.[1]   Fool Bear appeals, arguing that two of the charged offenses were multiplicitous, that the district court erred in instructing the jury, and that the evidence was insufficient to support his convictions.

## II.

Fool Bear first argues that we must set aside either his conviction on Count 2 (Aggravated Sexual Abuse of a Child) or Count 5 (Incest in Indian Country) because the two counts are multiplicitous.  The Double Jeopardy Clause of the Constitution "protects against multiple punishments for the same offense."  United States v. Anderson, 783 F.3d 727, 738–39 (8th Cir. 2015) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).  We refer to charges that violate this principle as "multiplicitous."  United States v. Benton, 890 F.3d 697, 713 (8th Cir. 2018). Because the application of this rule is limited to cases where the court would impose a greater punishment than the legislature intended, "determining whether multiple punishments for the same offense violate the Double Jeopardy Clause is a matter of ascertaining legislative intent."  Anderson, 783 F.3d at 739 (citing Garrett v. United States, 471 U.S. 773, 778 (1985)).  Where this intent is not readily apparent, "we ask 'whether each [charged offense] requires proof of a fact which the other does not.'" Id. (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)).  If so, the offenses are not multiplicitous.

Quite simply, each of these offenses requires proof of a fact that the other does not.[2]  Aggravated sexual abuse of a child under 18 U.S.C. § 2241(c) includes the

---

[1]He was also charged with Assault with a Dangerous Weapon, but was acquitted on that count.

[2]It is not even clear that these two charges relate to the same conduct, i.e., the same offense, because the aggravated sexual abuse charge related to a specific

element that the victim must have been under the age of 12 at the time of the offense. Incest, on the other hand, requires proof that the victim was a sufficiently close relative of the defendant that a marriage between them would be considered incestuous.  See 18 U.S.C. § 1153(b); N.D. Cent. Code § 12.1-20-11.  Therefore, we conclude, these two charges were not multiplicitous.[3]

## III.

Fool Bear next challenges the jury instruction for aggravated sexual abuse of a child.  Although "[w]e typically review a challenge to jury instructions for an abuse of discretion," in cases "[w]here a party fails to timely object to an instruction at trial . . . we review only for plain error."  United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011).  We affirm if "the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury."  United States v. Carlson, 810 F.3d 544, 554 (8th Cir. 2016).

The court instructed the jury that in order to find Fool Bear guilty of aggravated sexual abuse of a child, it must find that (1) "[Fool Bear] knowingly engaged in a sexual act with [his niece]; that is, the penetration, however slight, of the vulva of [his niece] by a penis"; (2) "at the time of the sexual act, [the niece] was under the age of 12"; (3) "[Fool Bear] is an Indian/Native American"; and (4) "the offense occurred within Indian Country."  Fool Bear did not object to this instruction.  Fool Bear now

incident when Fool Bear's niece was ten years old, while the incest charge involved Fool Bear's sexual conduct toward his niece from 2009 through 2015.  Nonetheless, because the Blockburger test is satisfied, even if the two charges did relate to the same conduct, they would not be multiplicitous.

[3]We also reject Fool Bear's argument that the jury instructions and verdict form should have required the jury to find a separate act in each count.  Such a finding is not required to avoid double jeopardy where, as here, the charged counts allege distinct crimes under Blockburger.

argues that the jury instruction was deficient because it omitted an essential element of the offense—that the defendant acted "with the intent to abuse, arouse, and gratify the sexual desire of any person." But that is not an element of this offense. "To prove aggravated sexual abuse of a minor, the government needed to show that [Fool Bear] (1) knowingly engaged in a sexual act with a person under the age of 12, (2) is an Indian, and (3) the offense occurred in Indian Country." United States v. DeCoteau, 630 F.3d 1091, 1093 n.2 (8th Cir. 2011) (citing 18 U.S.C. §§ 1153, 2241(c)). All of these elements were reflected in the jury instruction.[4]

## IV.

Fool Bear asserts the evidence was insufficient to convict him of three of the four charges. "This court reviews the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Tillman, 765 F.3d 831, 833 (8th Cir. 2014) (cleaned up). We reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (quotation omitted).

### Count 1: Attempted Aggravated Sexual Abuse of a Child

The parties agree that Count 1 was based exclusively on the first occasion of sexual conduct by Fool Bear toward his niece. The government concedes that the evidence at trial did not show "penetration, however slight, by a penis of the vulva

---

[4]Fool Bear is correct that the indictment alleged that he acted "with an intent to abuse, arouse, and gratify the sexual desire of another person." However, because this language is not an element of the offense charged, it was surplusage, and the district court appropriately ignored it. See United States v. McIntosh, 23 F.3d 1454, 1457 (8th Cir. 1994) (citing United States v. Miller, 471 U.S. 130, 144 (1985)); United States v. Washington, 992 F.2d 785, 787 (8th Cir. 1993).

of" his niece, so the evidentiary support for this count turns on whether Fool Bear's actions on that occasion can be considered an attempt to engage in such conduct. We conclude that—even under our deferential standard of review—the evidence of attempt was insufficient to support this conviction.

"The requisite elements of attempt are: '(1) an intent to engage in criminal conduct, and (2) conduct constituting a "substantial step" toward the commission of the substantive offense which strongly corroborates the actor's criminal intent.'" United States v. Plenty Arrows, 946 F.2d 62, 66 (8th Cir. 1991) (quoting United States v. Joyce, 693 F.2d 838, 841 (8th Cir. 1982)). Based on the charge in this case, therefore, the government was required to show that Fool Bear's conduct during that first encounter was sufficient to establish, beyond a reasonable doubt, that it was Fool Bear's intent to engage in penetration of his niece's vulva by his penis, and that his conduct constituted a substantial step toward that conduct. Fool Bear argues the government presented no evidence—in his niece's testimony or elsewhere—to demonstrate that, on that day, he intended to engage in penile penetration.

The government concedes that there was no direct evidence that Fool Bear intended to engage in the conduct the indictment alleges he attempted on that day. Rather, the government asks us to infer that this was Fool Bear's intent based on the fact that "every single sexual assault after the first one involved penile-vaginal sex." While this evidence was admissible, see Fed. R. Evid. 404(b)(2); Fed. R. Evid. 413(a); Fed. R. Evid. 414(a), that does not answer whether it was sufficient to support a reasonable inference of Fool Bear's intent, beyond a reasonable doubt. On this first occasion, unlike during the later incidents of abuse, Fool Bear stopped short of penetration, and the government introduced no evidence that this abandonment was triggered by some external event. And unlike in the cases cited by the dissent, there is no evidence that Fool Bear had engaged in penile penetration with his niece or another victim prior to this date. See United States v. Geddes, 844 F.3d 983, 990 (8th Cir. 2017) (witness's testimony about the defendant's "earlier use of force against

-6-

her" was relevant to intent); United States v. Brumfield, 686 F.3d 960, 963 (8th Cir. 2012) (testimony that the defendant, a month prior to discovery of child pornography in his possession, had "propositioned a minor to have sex with him and to help him produce child pornography" was relevant to his intent to possess child pornography). Combined with the lapse of time before the later acts of sexual abuse, his intent during this first incident cannot be inferred beyond a reasonable doubt from his later conduct.

The government also argues that Fool Bear's intent can be inferred from his actions during that first incident, citing United States v. DeMarce, 564 F.3d 989 (8th Cir. 2009), United States v. Villareal, 707 F.3d 942 (8th Cir. 2013), and United States v. Brown, 702 F.3d 1060 (8th Cir. 2013), as cases where the defendant took substantial steps that "fall well short of Fool Bear's conduct in this matter." However, in each of those cases, there was independent evidence of the defendant's intent—evidence that is absent here. In DeMarce, for example, the defendant admitted to agents that he pulled down the victim's underwear because he "was trying to rape [his] niece." 564 F.3d at 993. The defendants in Villareal and Brown did not even challenge the intent element, given the substantial evidence in the record. See Villareal, 707 F.3d at 960–61; Brown, 702 F.3d at 1064 & n.3.

"The chief purpose of the 'substantial step' requirement 'is to corroborate the actor's specific intent to commit the crime.'" Plenty Arrows, 946 F.2d at 66 (quoting Fryer v. Nix, 775 F.2d 979, 993 (8th Cir. 1985)). The conduct must be "of such an 'unequivocal nature' that it is 'calculated to bring the desired result to fruition.'" Id. (quoting Fryer, 775 F.2d at 993); see also Model Penal Code § 5.01(2) ("Conduct shall not be held to constitute a substantial step . . . unless it is *strongly corroborative* of the actor's criminal purpose." (emphasis added)). Here, the sole evidence of a "substantial step" constitutes a different sex act, i.e., the touching and rubbing of genitalia. This act, standing alone, provides insufficient support for the inference that Fool Bear intended to engage in penile penetration—as he did on subsequent

-7-

occasions—but failed to follow through. In sum, neither Fool Bear's conduct nor his later abuse supports a reasonable inference about Fool Bear's intent on this occasion. Unlike in DeMarce, the evidence here "simply does not establish beyond a reasonable doubt that [Fool Bear] intended to proceed beyond" fondling to penile penetration. See Plenty Arrows, 946 F.2d at 66.[5]

*Count 2: Aggravated Sexual Abuse of a Child*

Count 2 was also based on a single occasion of conduct, but Fool Bear concedes that what happened that day involved "penetration, however slight, by a penis of the vulva of" his niece. However, Fool Bear asserts, there was insufficient evidence as to his niece's exact age at the time of the offense. Age is a necessary element of the offense: the victim must be "another person who has not attained the age of 12 years." 18 U.S.C. § 2241(c). However, Fool Bear's niece stated that the sexual abuse started "[a]bout when I was ten." She testified that the incident that formed the basis for this charge occurred "maybe a few months after that" when she

---

[5]The government urges us to uphold this conviction on an alternative basis: that any error was harmless given the evidence that Fool Bear rubbed his niece's vagina with his bare hand on that day and that his hand "[went] into the crack of [her] genitalia." The government provides no citation in support of such a harmlessness analysis. Moreover, to reach such an alternative holding we would have to approve a variance of proof from the indictment which would implicate substantial Fifth Amendment issues. See McIntosh, 23 F.3d at 1457–58 (describing when a variance might be deemed harmless); see also Berger v. United States, 295 U.S. 78, 82–84 (1935). And, because the jury was instructed based on the specific conduct alleged, we would also be upholding a conviction based on evidence that was not found by the jury, likely violating the Sixth Amendment. See United States v. Gaudin, 515 U.S. 508, 510 (1995). For these reasons, we decline this invitation. See United States v. Reddest, 512 F.3d 1067, 1073 (8th Cir. 2008) ("The Government did not advance this argument before the district court . . . and we believe that its conviction must rise or fall on the charge it chose to bring and on the instructions submitted to the jury, neither of which was predicated on the alternative definition it now proposes.").

was still ten years old.  The evidence was sufficient to support Fool Bear's conviction on Count 2.

*Count 3: Aggravated Sexual Abuse of a Child by Force*

Count 3 was charged—under 18 U.S.C. § 2241(a)—based on a single incident that occurred in October or November 2015.  "Force is an element of the offense of aggravated sexual abuse" under § 2241(a).  United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001).  As to this count, Fool Bear argues, the evidence was insufficient to show that the sexual conduct was achieved "by using force against" the victim.  The government, on the other hand, argues that the niece's testimony at trial was sufficient to show that force was used.  Ever conscious of our deferential standard of review of a jury verdict, we nevertheless conclude that the evidence here was insufficient to show that force was used in this instance.

"The requisite force is established 'if the defendant overcomes, restrains, or injures the victim or if the defendant uses a threat of harm sufficient to coerce or compel submission."  Id. (quoting United States v. Eagle, 133 F.3d 608, 610 (8th Cir. 1998)).[6]  The government argues that force was used in both of these ways, i.e., through the actual use of force and the threat of harm.

---

[6]See also United States v. Fire Thunder, 908 F.2d 272, 274 (8th Cir. 1990) ("The requirement of force may be satisfied by a showing of the use, or threatened use of a weapon; the use of such physical force sufficient to overcome, restrain, or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim." (quoting H.R. Rep. No. 99-594, at 14 n.54a (1986) (accompanying the Sexual Abuse Act of 1986, Pub. L. 99-654, 100 Stat. 3660 (1986)))); id. ("The force requirement . . . is met when the 'sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact.'" (quoting United States v. Lauck, 905 F.2d 15 (2d Cir. 1990))).

First, we look at whether Fool Bear's use of force was sufficient to "restrain, overcome, or injure" his niece. Gabe, 237 F.3d at 961. We interpret this language in light of the statutory scheme enacted by Congress, and conclude that "[t]o render the distinction between sexual abuse and aggravated sexual abuse meaningful, Section 2241(a)(1) requires a showing of actual force." United States v. H.B., 695 F.3d 931, 936 (9th Cir. 2012) (cleaned up); see also United States v. Shaw, 891 F.3d 441, 448 (3d Cir. 2018). There is no evidence that Fool Bear's conduct constituted force sufficient to restrain or injure his niece, so this case turns on whether there was a use of force sufficient to "overcome" the victim. The government argues that we should read "overcome" to encompass "conduct meant to get the better of" the victim. But the word "overcome," as used in this context, is narrower and addresses the *type* of force necessary to satisfy the statutory requirement that a defendant have accomplished the crime "by using force against [an]other person." See 18 U.S.C. § 2241(a)(1). Because conduct that no one would consider forceful—like emotional manipulation or financial pressure—would seem to satisfy the definition the government urges, it is a poor fit. In addition, we are not inclined to put an additional layer of interpretation on a word that is itself interpretive. Thus, the question before us is whether the evidence in this case showed, beyond a reasonable doubt, that Fool Bear acted with *force* sufficient to "overcome" his niece, keeping in mind that this level of force is meant to distinguish between the crime of aggravated sexual abuse and the lesser offense of sexual abuse.

The government argues force was evident because the niece used the words "grab[]," pull[]," and "push[]" when testifying about Fool Bear's treatment of her during this incident. However, we view all testimony in context:

> Q [Prosecutor]. And what happens at that particular last event?
> A [Niece]. He had laid me on the bed and had started taking advantage of me, and I was getting tired of it, so I just let it happen, and it was over before I knew it.

Q. And when you say you let it happen, is it -- we're talking about "it." Is it sex?

A. Yes.

Q. Full-penetration sex?

A. Yes.

Q. You indicated that you -- he laid you on the bed. How were you when he laid you on the bed, and where were you at? Were you standing by the bed? Were you --

A. Yeah, I was standing by the bed

Q. Okay. And how did you get in there?

A. He had taken me in there from the kitchen.

Q. And when you say he had taken you in there from the kitchen, how did he take you? Did he grab you by the hand? Did he --

A. He grabbed my shoulders and led me.

Q. Did you want to go in there?

A. No.

Q. So he grabbed you by the shoulders and he led you to the room?

A. Yes.

Q. Are you and he saying anything as this is happening?

A. No.

Q. So you get in the room, and where are you at by the bed when he lays you down?

A. Like right there (indicating).

Q. So at the foot of the bed on [your Aunt's] side?

A. Yes.

Q. And how does he lay you down on the bed?

A. He pulls me over to his side, and I lay right there (indicating).

Q. Okay. And are you laying lengthwise on the bed or on the edge again?

A. On the edge again. Every time he would penetrate me, it was mostly always on the edge of the bed.

Q. Okay. So he'd be standing up and you'd be lying with your back on the bed.

A. Yeah.

Q. So this time you're at the foot of the bed?

A. Mm-hmm.

Q. On his side.

A. Yes.

Q. And when he pushes you down on the bed, does he put you -- his hand on your shoulder and put you down until you -- until your back is on the bed?

A. Yeah.

Q. Did you want to do this?

A. (Shakes head.)

Q. Are you wearing clothing at the time?

A. Yes, I am.

Q. Okay. So when you first lay down, he pushes you down on the bed, you're wearing clothing.

A. Yes.

[The niece then describes Fool Bear removing her clothes and engaging in penetration that lasted "for maybe five minutes"].

Even with the support of all reasonable inferences, the use of the words grab, push, and pull is inadequate to prove beyond a reasonable doubt that the requisite degree of force was used. First we note the niece did not use the word "push." Instead, in response to a compound question based on assumptions not in evidence, she said "Yeah." Similarly, while she did say that Fool Bear "grabbed [her] shoulders," she did so in response to a question from the prosecution asking whether Fool Bear had "grab[bed] her by the hand." The victim's mirroring of the prosecutor's language in responding to a question limits what reasonable inferences a jury might draw from this language. And she used the word "pull" to describe how "he la[id her] down on the bed" prior to the sex act. In context, the use of these words cannot be reasonably understood to demonstrate the type of force necessary to "overcome, restrain, or injure" a person. See Fire Thunder, 908 F.2d at 274. The victim agreed with the prosecutor that she did not "want to do this." But the lack of consent also is insufficient to meet the government's burden of proving "the use of force"—an element of the charged offense—beyond a reasonable doubt.

The government argues, however, that this failure of proof does not matter because "the jury was also aware of Fool Bear's very physically abusive conduct

-12-

towards" his niece. This conduct, it explains, supports an inference that she might have subjectively understood Fool Bear to be threatening her and, therefore, that she was coerced into submission because she was afraid of him. See Gabe, 237 F.3d at 961. That was the situation in Gabe, where the victim testified "that she obeyed [Gabe] during these incidents because[, due to his past physical abuse,] she was afraid of him." Id. Here, on the other hand, the niece did not offer similar testimony. The government nonetheless asks us to draw this inference from the mere fact of past physical abuse. While we draw all reasonable inferences in favor of the verdict, this inference stretches too far. There was no evidence that Fool Bear's physically assaultive behavior had ever been linked to his sexually assaultive behavior, and there was evidence that, on one occasion when Fool Bear had been physically assaultive, the niece fought back using a razor blade. Any inference that we might draw about her state of mind would be inadequate to show, beyond a reasonable doubt, that Fool Bear's conduct constituted an implied threat. Thus, we cannot conclude that the government carried its burden to show the use of force as required under Count 3.

## V.

We affirm Fool Bear's convictions on Counts 2 and 5, reverse his convictions on Counts 1 and 3, and remand the case to the district court for further proceedings.

STRAS, Circuit Judge, dissenting in part.

I disagree with the court on only one issue. I would affirm Fool Bear's conviction of attempted aggravated sexual abuse of a child because I think he had the intent to complete the crime and did just enough to have taken a "substantial step" toward its completion. At the very least, the government presented sufficient evidence for the jury to have reasonably concluded that both of these elements were satisfied.

-13-

First, the government proved Fool Bear's intent to penetrate his niece. His niece, who was only ten years old at the time of the incident, testified that Fool Bear told her to "come l[ie] with [him]," placed her hand on his erect penis, and then rubbed her vagina underneath her clothes. Although these kinds of sexual acts alone are typically insufficient to establish "the actor's ultimate intent" to penetrate a victim, *United States v. Plenty Arrows*, 946 F.2d 62, 66 (8th Cir. 1991), the government offered more here, *see United States v. Wright*, 540 F.3d 833, 840–41 (8th Cir. 2008).

According to the niece, beginning just a few months after the first encounter, Fool Bear regularly penetrated her once or twice a month for the next four years. We have repeatedly held that the government may introduce other bad acts and crimes "to establish knowledge and intent." *United States v. Geddes*, 844 F.3d 983, 990 (8th Cir. 2017) (citation and brackets omitted); *see also United States v. Brumfield*, 686 F.3d 960, 962–63 (8th Cir. 2012) (explaining that evidence that the defendant had "propositioned [a minor] to have sex with him while he videotaped it" was admissible to show intent to possess child pornography). Indeed, under the Federal Rules of Evidence, the jury was specifically permitted to "consider[]" evidence that Fool Bear "committed . . . other sexual assault[s]" because it was "relevant" to determining whether he had the intent to penetrate her. Fed. R. Evid. 413(a); *accord* Fed. R. Evid. 414(a); *see also United States v. Oldrock*, 867 F.3d 934, 939 (8th Cir. 2017) (explaining that evidence that the defendant had engaged in "similar[] . . . touching" with a "similar[ly] . . . age[d]" minor was admissible as propensity evidence under Rule 413(a)). And, contrary to the court's suggestion that Fool Bear's other bad acts are immaterial because they did not occur "prior to [the first encounter]," *ante* at 6, we have explained that "[t]he mere subsequency of an act to that charged in an indictment does not on that ground alone make it incompetent to establish intent or motive," *United States v. Riley*, 657 F.2d 1377, 1388 (8th Cir. 1981) (citation omitted); *accord United States v. Brown*, 923 F.2d 109, 111 (8th Cir. 1991).

-14-

Fool Bear's later acts of sexual abuse were sufficiently similar and close in time to the first encounter to allow the jury to infer his "ultimate intent." *Plenty Arrows*, 946 F.2d at 66; *cf. United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) (affirming the admission of an 18-year-old offense). For example, in discussing one of the completed penetrations that occurred just "a few months" later, the niece testified that she stayed home from school, Fool Bear abused her in his bedroom, the encounter involved contact with her vagina, and it ended with a warning that she was not to "tell anyone or else [they would] both get in trouble." The first encounter shared these same characteristics. The jury could have reasonably inferred, based on a continuous course of sexual abuse that began shortly thereafter, lasted several years, and involved a recurring pattern of behavior, that Fool Bear intended to penetrate his niece the first time he touched her.

Second, Fool Bear's conduct, which included placing his niece's hand on his erect penis and touching her vagina under her clothes, was a "substantial step" toward completion of a crime requiring penetration. A substantial step is an act that is "more than mere preparation," but it "may be less than the last act necessary before the actual commission of the substantive crime." *United States v. Mazzella*, 768 F.2d 235, 240 (8th Cir. 1985) (quoting *United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980)). The jury may consider "circumstantial evidence" in determining whether a particular act "constitute[s] a substantial step." *See United States v. Burks*, 135 F.3d 582, 584 (8th Cir. 1998).

Here, the jury knew that Fool Bear intended to, and actually did, penetrate his niece on a number of other occasions. And by the time the first encounter ended, Fool Bear was well on his way toward penetrating her. *See, e.g., United States v. Villarreal*, 707 F.3d 942, 961 (8th Cir. 2013) (concluding that touching the victim's vagina was a substantial step toward committing sexual abuse). Under *Mazzella*, he did enough, as it was not necessary for him to have actually penetrated her, or even been on the verge of penetrating her, for his conduct to have crossed the line into an

attempt. Only a substantial step, not a completed or nearly completed offense, is required.

The court nevertheless concludes that "the touching and rubbing of genitalia" during the first encounter was not a substantial step toward penetration because it "constitute[d] a different sex act." *Ante* at 7. But just because an act completes one crime does not mean that it cannot also qualify as a substantial step toward the commission of another, different crime. A would-be killer who breaks into the intended victim's home has not only committed a burglary, he has also completed a substantial step toward committing a murder. *See, e.g.*, Model Penal Code § 5.01(2)(d) (explaining that "unlawful entry of a structure . . . in which it is contemplated that the crime will be committed" is a substantial step). The same is true here.

*       *       *

The jury heard evidence that Fool Bear sexually abused his niece over the course of four years, beginning when she was just ten years old, and that the abuse followed a predictable pattern. Under these circumstances, it was reasonable for the jury to have found that Fool Bear intended to penetrate her from the very beginning and that his actions during their first encounter were a substantial step toward that end. Accordingly, I would conclude there is sufficient evidence to affirm Fool Bear's conviction of attempted aggravated sexual abuse of a child.

_____